IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RICHARD HANSON                                                                                                PLAINTIFF

vs.                                              Civil No. 1:06-cv-1074

MICHAEL J. ASTRUE[1]                                                                                       DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Richard Hanson ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

**1. <u>Background:</u>**

The application for DIB now before this Court was filed on May 4, 2004. (Tr. 69-71). This application alleges an onset date of March 2, 2004. (Tr. 69). The Plaintiff complains of headaches, memory problems, balance problems, and functional psychosis. (Doc. No. 9) (Tr. 35, 82-91). The Plaintiff's application was initially denied on August 27, 2004 and was denied again on reconsideration on November 30, 2004. (Tr. 48-51). The Plaintiff requested an administrative hearing which was held on July 6, 2005 in Little Rock, Arkansas. (Tr. 29). The Plaintiff was present but was not represented by counsel at the hearing. (Tr. 29-32). The Plaintiff's relative, Thomas Dowling, was also present and testified at the hearing. (Tr. 29, 40-45). At the time of the hearing, the Plaintiff was forty-seven (47) years old with a high school education. (Tr. 17, 33).

On September 13, 2005, the Administrative Law Judge ("ALJ") issued a written opinion. (Tr. 17-22). The ALJ concluded the Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time since the alleged onset date. (Tr. 17). The ALJ found the Plaintiff had been treated for functional psychosis. (Tr. 21, Finding 3). The ALJ concluded the Plaintiff's impairments or combination of impairments, although severe, did not meet the requirements of Appendix 1, Subpart P, Regulations No. 4 ("Listings"). *Id.*

The ALJ also evaluated the subjective complaints of the Plaintiff and determined the Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 19). The Plaintiff alleged he was unable to work because he "can't remember a lot of things" and because he did not "have the right balance." (Tr. 35). The Plaintiff complained of pain from frequent headaches. (Tr. 82-91). The Plaintiff also complained that he "heard voices." (Tr. 92). The ALJ analyzed these subjective complaints. (Tr. 17-22). The ALJ concluded these subjective complaints were not credible based

upon the Plaintiff's daily activities and due to a number of inconsistencies regarding the nature and extent of the Plaintiff's alleged impairment. (Tr. 18). Based upon this credibility determination and the ALJ's examination of the Plaintiff's medical records, the ALJ concluded the Plaintiff had the RFC to perform heavy, semiskilled work. (Tr. 19-20).

The ALJ also determined the Plaintiff could perform his Past Relevant Work ("PRW"). (Tr. 21, Finding 5). Vocational Expert ("VE") William Elmore testified at the administrative hearing and was presumably called to address this issue. (Tr. 46-47). The VE testified the Plaintiff's PRW included work as a construction worker (heavy, semiskilled), pipe fitter (heavy skilled), and iron worker (heavy, skilled). (Tr. 46). The ALJ asked the VE whether the Plaintiff had any transferable skills to less demanding skilled or semiskilled work. (Tr. 46). The VE indicated that the Plaintiff's skills might transfer to a medium exertional level job for iron workers. (Tr. 47). The VE also indicated there may be 500 such jobs in Arkansas. *Id.* The ALJ did not ask the VE any hypothetical questions. (Tr. 46-47). The ALJ did not ask, and the VE did not address, whether the Plaintiff would be able to perform his PRW. *Id.*

On June 13, 2006, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, on July 19, 2006, the Plaintiff filed this action. (Doc. No. 1). This case was referred to the undersigned on February 21, 2007. The Plaintiff and the Defendant have filed appeal briefs. (Doc. Nos. 9-10). This case is ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any SGA. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a SGA; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has

an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his or her PRW; and (5) if the claimant cannot perform his or her PRW, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920.

**3. Discussion:**

The Plaintiff brings the present appeal claiming (1) the ALJ failed to adequately develop the record, (2) the ALJ erred in determining the Plaintiff could perform his PRW, and (3) the ALJ erred in his *Polaski* determination. (Doc. No. 9, Pages 3-14). The Defendant argues that the ALJ was not required to obtain additional medical records and further develop the record, the ALJ correctly determined the Plaintiff could perform his PRW, and the ALJ properly considered and discounted the Plaintiff's subjective complaints. (Doc. No. 10, Pages 3-11). This Court will address these arguments in order.

**A. The ALJ's Development of the Record**

The Plaintiff claims that the ALJ failed to adequately develop the record by failing to obtain the Plaintiff's medical records from Willis Knighton and the Plaintiff's medical records dated after November of 2004. (Doc. No. 9, Pages 8-9). The Plaintiff claims the ALJ was required to obtain those medical records prior to making his disability determination. *Id.* The Defendant argues the ALJ's determination was based upon evidence sufficient to make an informed decision. (Doc. No.

10, Page 3). The Defendant argues the ALJ reviewed a number of medical records prior to making his disability determination and the ALJ was not required to request any additional medical records. *Id.* at 3-6.

In the Eighth Circuit, the ALJ clearly has the duty to fully and fairly develop the record. *See Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). The ALJ is responsible for developing the record because the social security hearings are non-adversarial. *Id.* The ALJ, however, is under no duty to "go to inordinate lengths to develop a claimant's case." *Battles,* 36 F.3d at 45 (internal quotes omitted). The ALJ must only "make an investigation that is not wholly inadequate under the circumstances." *Id.; See Payton v. Shalala,* 25 F.3d 684, 686 (8th Cir. 1994).

The ALJ is also not always required to request all of the Plaintiff's medical records prior to making a disability determination. *See Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995). The ALJ is only required to obtain additional medical records in two situations. First, the ALJ is required to obtain additional medical records if the evidence in the record is insufficient to support the ALJ's decision. *See Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." (quoting *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994))). Second, the ALJ is required to obtain additional medical records if those records would alter the outcome of a disability determination. *See Snead v. Barnhart,* 360 F.3d 834, 839 (8th Cir. 2004) (holding that the case must be reversed and remanded because there was a "central and potentially dispositive issue unexplored by the ALJ").

The ALJ's duty to develop the record applies regardless of whether the Plaintiff is represented by counsel. *See Baker v. Barnhart,* 457 F.3d 882, 895 (8th Cir. 2006). The ALJ,

however, has a heightened duty to develop the record in a case such as the present action where the Plaintiff is not represented by counsel. *See Clark v. Shalala,* 28 F.3d 828, 830 (8th Cir. 1994) ("[T]his Court has consistently held that the ALJ must fully and fairly develop the record so that a just determination of disability may be made. . . . Claimants, especially those not represented by counsel, can hardly be expected to be familiar with the intricacies of the Secretary's Guidelines." (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982))).

In the present action, the Court finds the ALJ failed to adequately develop the record. The ALJ relied upon medical records from the South Arkansas Regional Health Center, Dr. John Michael Jameson, and Living Hope of Texarkana which date from late April of 2004 through early November of 2004.[3] (Tr. 111-172). Listed chronologically, the first set of these records arefrom South Arkansas Regional Health Center and range from April 20, 2004 through May 27, 2004. (Tr. 151-171). These records all indicate that the Plaintiff suffers from psychosis with auditory hallucinations and that the Plaintiff is "impaired" or "appears impaired." *Id.* The second set of records are from Dr. John Michael Jameson and are dated July 14, 2007. (Tr. 111-118). Dr. Jameson was unable to diagnose the Plaintiff and stated that "the presented symptomatology does not fit into a readily identifiable disorder." (Tr. 118).

The third set of medical records are from Living Hope of Texarkana and are dated September 7, 2004 through September 14, 2004. (Tr. 119-131, 150, 193). The Plaintiff was admitted to Living Hope of Texarkana and was treated during part of this time period. These medical records indicate the Plaintiff suffers from "major depression with psychotic features." (Tr.

---

[3] These medical records are more thoroughly summarized in the Plaintiff's Appeal Brief. (Doc. No. 9, Pages 5-7). This Court will only briefly summarize the medical records referenced in the Plaintiff's Appeal Brief and in the transcript.

7

119).  Dr. Chester Jenkins from Living Hope of Texarkana noted that the Plaintiff was admitted to be treated for "depression, suicidal ideation, and auditory hallucinations."  *Id.*  Dr. Jenkins also noted that the Plaintiff "reported hearing voices instructing him to harm himself."  *Id.*

The fourth set of medical records are from South Arkansas Regional Health Center and range from September 16, 2004 through November 11, 2004.  (Tr. 132-150).  These records are follow-up records from the Plaintiff's impatient treatment at Living Hope of Texarkana. *Id.*  These records indicate that, even though the Plaintiff's condition did improve, the Plaintiff continued to suffer from hallucinations on November 11, 2004, the date of the Plaintiff's last follow-up visit.  (Tr. 133).  There is no other evidence in the record dated after November 11, 2004 indicating that the Plaintiff was ever effectively treated for these hallucinations.  Thus, the record indicates that the Plaintiff suffered from hallucinations as of November 11, 2004 and was never effectively treated for his hallucinations.  Accordingly, these medical records provide an insufficient basis for the ALJ's conclusion that the Plaintiff does not suffer from a mental impairment.

The ALJ also failed to obtain the Plaintiff's medical records from Willis Knighton.  The Plaintiff presented the ALJ with his discharge papers from Willis Knighton and told the ALJ that he had been released from Willis Knighton shortly before the hearing.  (Tr. 35-36, 194-195).  The ALJ chose not to request those medical records.  Instead, the ALJ appeared to discount the importance of the Plaintiff's medical records from Willis Knighton because the ALJ thought the Plaintiff went to Willis Knighton "just for an emotional problem."  (Tr. 12).  Both the Plaintiff (Tr. 33, 35-37) and Mr. Dowling (Tr. 42) testified at length about the Plaintiff's admission to Willis Knighton.  The Plaintiff stated that he was admitted because he "just went off, [because of] stress," and the Plaintiff's relative, Thomas Dowling, testified that the Plaintiff was admitted because the

Plaintiff was suicidal and wanted to drown himself in a lake. (Tr. 33, 35-37). Because these medical records may have changed the ALJ's disability determination, the ALJ should have requested these medical records. *See Snead,* 360 F.3d at 839.

This Court, however, should not remand a case simply because the ALJ failed to develop the record. In order for this Court to properly remand a case for the ALJ's failure to develop the record, the Plaintiff must show not only that the ALJ failed to develop the record but must also show that the ALJ's failure prejudiced the Plaintiff. *See Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993) ("absent unfairness or prejudice, we will not remand."); *accord Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001). As stated by the Eighth Circuit, the Plaintiff must actually *point to* evidence showing that he has been prejudiced. *See Haley,* 258 F.3d at 749 (8th Cir. 2001) ("Furthermore, 'reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. . . . Mr. Haley has made no such showing. Therefore, the ALJ did not err in failing to send the claimant for a consultative examination.").

There is no indication from any of the testimony or from any of the medical records that the ALJ's failure to obtain these additional medical records prejudiced the Plaintiff. In his appeal brief, the Plaintiff failed to mention or demonstrate how he had been prejudiced by the ALJ's failure to obtain these medical records. (Doc. No. 9, Pages 4-10). Instead, the Plaintiff merely argues that these records would have been important in the ALJ's determination. *Id.* at 8 (noting that the medical records from Willis Knighton "would seem to be important, if not essential"). Because the Plaintiff has not demonstrated that he was prejudiced by the ALJ's failure to obtain additional medical records, this Court cannot remand this case to the ALJ due to the ALJ's failure to adequately develop the record. *See Haley,* 258 F.3d at 749.

The Plaintiff also raises two additional issues on the ALJ's failure to develop the record. First, the Plaintiff directs this Court to medical records from Dr. Emborgo at the AHEC Center in El Dorado, Arkansas. (Tr. 9-10). The Plaintiff believes these medical records are important because Dr. Emborgo treated the Plaintiff in order to determine the "'organic causes' for the rather abrupt onset of hallucinations." (Doc. No. 9, Page 9). The Plaintiff mentioned these medical records for the first time in his letter to the Appeals Council, and the ALJ did not have the benefit of knowing these medical records existed. (Tr. 9-10). Because the Plaintiff first mentioned these medical records to the Appeals Council, and never noted their existence to the ALJ, the ALJ did not err in failing to request these medical records because he did not know they existed.

Second, the Plaintiff directs the Court to a statement by Dr. Flaherty dated June 4, 2004 (Tr. 151), indicating that Dr. Flaherty thought the Plaintiff should have a physical exam to determine if the Plaintiff's problem was solely a psychiatric problem. (Doc. No. 9, Page 9). Dr. Flaherty, however, also noted that he had told the *Plaintiff* to seek a thorough medical screening and that the *Plaintiff* had not followed through with this recommendation. (Tr. 151) (emphasis added). The Plaintiff has not provided any reason for his failure to follow Dr. Flaherty's suggestion, and without this explanation, this Court will not fault the ALJ for not seeking an additional test that the Plaintiff himself did not see fit to seek.

As a part of the Plaintiff's argument that the ALJ failed to adequately develop the record, the Plaintiff claims that the ALJ was improperly concerned that the "patient's drug screen showed positive for Benzodiazepine." (Doc. No. 9, Page 4) (internal quotes omitted). Whether the ALJ properly considered these test results is an issue that should be addressed under the ALJ's credibility determination and not as a part of the Plaintiff's argument that the ALJ failed to develop

the record. Furthermore, even though the ALJ raised this issue at the hearing (Tr. 43-45), the ALJ did not even consider this issue in his credibility determination. (Tr. 17-22). Since the ALJ did not consider this issue in his credibility determination, this Court finds that this error did not prejudice the Plaintiff.

The Plaintiff also raises an unrelated issue in his argument that the ALJ failed to develop the record and argues that the ALJ improperly concluded "the claimant has never been hospitalized or treated as an outpatient for a mental or emotional disorder." (Doc. No. 9, Page 8). The Plaintiff correctly notes that the ALJ erred in reaching this conclusion. However, since the Plaintiff does not otherwise claim the ALJ erred in his evaluation of the Plaintiff's mental impairments pursuant to 20 CFR § 404.1520a and 20 CFR § 416.920a–which would be required for this Court to reverse the ALJ's decision on this issue–this Court finds that the ALJ's mistake did not prejudice the Plaintiff.

While the Court finds the ALJ failed to adequately develop the record in this case such finding is not a basis for reversal. The Plaintiff failed to demonstrate that he was prejudiced by the incomplete record and reversal is therefor not appropriate on this basis alone.

**B. The ALJ's PRW Determination**

The Plaintiff also argues the ALJ erred in determining the Plaintiff can perform his PRW. (Doc. No. 9, Page 10). The Plaintiff argues that there is no substantial evidence in the record to support a finding that the Plaintiff can perform his PRW. *Id.* The Plaintiff notes that the statements of Ms. Stone, Dr. John Michael Jameson, Dr. Kathryn Gales, and Mr. Downing[4] all indicate that

---

[4] The Plaintiff also argues that the ALJ improperly discounted the testimony of Mr. Dowling. The ALJ determined that the testimony of Mr. Dowling was not credible because it was based upon an uncritical acceptance of the Plaintiff's complaints and was, to some degree, motivated by the desire to see the Plaintiff obtain benefits. (Tr.

the Plaintiff cannot perform his PRW.  *Id.*  The Defendant does not thoroughly address this issue in his brief.  (Doc. No. 10).  The Defendant merely notes that "the record contained adequate evidence for the ALJ to make a decision regarding Plaintiff's ability to return to his past work."  *Id.* at 7.

As an initial matter, it is important to note that as long as the ALJ's PRW determination is supported by substantial evidence, this Court must affirm the ALJ's decision.  *See Haley,* 258 F.3d at 747.  Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *See Johnson,* 240 F.3d at 1147.  Of course, substantial evidence requires at least *some* evidence.  *Id.*

In the present action, there is no substantial evidence supporting the ALJ's PRW determination.  In making his PRW determination, the ALJ merely stated, "after review of the medical evidence, the Administrative Law Judge finds that the claimant may have some limitations in mental functioning.  However, he would be able to perform his past work." (Tr. 19).  The ALJ determined "the claimant retains the residual functional capacity for heavy, semi-skilled work."  *Id.*  The ALJ based this determination entirely on the fact that the "claimant does respond and [is] able to function when he is compliant with his medications."  *Id.*  The ALJ did not rely upon a VE's response to a hypothetical in making this determination, and the ALJ did not state that he based his PRW determination upon any other evidence in the record.

The ALJ's basis for determining the Plaintiff can perform his PRW–that the claimant responds to and is able to function when taking his medications–is not supported by the record.  The

---

20).  The ALJ did not error in reaching this conclusion. *See Tate v. Apfel,* 167 F.3d 1191, 1198 n.8 (8th Cir. 1999) (holding the ALJ properly discounted the testimony of lay witnesses based on the ALJ's finding that they had an incentive to see the claimant obtain benefits and had an uncritical acceptance of the claimant's complaints).

Plaintiff's most recent medical record in the transcript is from South Arkansas Regional Health Center and is dated November 11, 2004. (Tr. 133). In this record, Dr. Peckham stated that the Plaintiff continues to experience hallucinations despite the fact that the Plaintiff is taking his medications. (Tr. 133). Thus, this record indicates that the Plaintiff's symptoms are *not* controlled while he is taking his medications. The ALJ did not refer to any other medical records indicating the Plaintiff's symptoms are controlled while he is taking his medications and that he can function and perform his PRW when he takes his medications. (Tr. 17-22). As noted by the Plaintiff, there is also substantial evidence indicating the Plaintiff cannot perform his PRW. (Doc. No. 9, Pages 9-13). Accordingly, because the ALJ based his PRW determination upon one finding that is not supported by the record, the decision of the ALJ is not supported by substantial evidence.

### C. The ALJ's Credibility Determination

The Plaintiff also argues that ALJ did not apply *Polaski*. (Doc. No. 9, Pages 13-14). The Plaintiff argues that the ALJ should have applied *Polaski* in evaluating the Plaintiff's subjective complaints of lack of memory, balance, and functional psychosis. *Id.* The Defendant argues the ALJ properly considered all objective and subjective evidence, and concluded that, based on the record as a whole, "Plaintiff's subjective complaints were not totally credible." (Doc. No. 10, Page 8). The Defendant argues the ALJ reviewed the inconsistencies in the record as a whole and the Plaintiff's daily activities prior to discounting the Plaintiff's subjective complaints. *Id.* The Defendant argues that the ALJ's analysis was proper and was sufficient under *Polaski*. *Id.*

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). These five *Polaski* factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective

complaints of pain and discomfort: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *Id.* at 1322. The ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ acknowledges and examines those factors before discounting the subjective complaints of the claimant. *See Lowe v. Apfel,* 226 F.3d 969, 371-72 (8th Cir. 2000).

In the present action, the ALJ did not acknowledge *Polaski* or any of the *Polaski* factors. (Tr. 17-22). This Court finds that this was error and was in complete disregard of the dictates of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). Contrary to the Defendant's argument, the ALJ is required to *at least* acknowledge *Polaski* and all five of the *Polaski* factors prior to discounting the Plaintiff's subjective complaints. *See Brown,* 87 F.3d at 965. Since the ALJ in the present action did not even acknowledge *Polaski* or any of the *Polaski* factors, this case should be reversed and remanded.

### 4. Conclusion:

The Court finds that the ALJ failed to fully and fairly develop the record in the present action. The Court does not remand this action for the ALJ's failure to develop the record because the Plaintiff did not establish that he had been prejudice by the ALJ's failure. However, since this case is being remanded on a different basis, the ALJ is directed to further develop the record and to request the Plaintiff's medical records from Willis Knighton and from Dr. Emborgo in order to fully and adequately develop the record. The ALJ should also apply and consider *Polaski* and all of its factors on remand pursuant to *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).

Accordingly, based on the foregoing, the decision of the ALJ, denying benefits to the

Plaintiff, is not supported by substantial evidence, and should be reversed.  This matter should be remanded to the Commissioner for further consideration consistent with this opinion.

      **ENTERED** this **27th day of April, 2007.**

                                              /s/   Barry A. Bryant
                                              Honorable Barry A. Bryant
                                              United States Magistrate Judge